Thiago M. Coelho, SBN 324715
*thiago@wilshirelawfirm.com*
Carolin K. Shining, SBN 201140
*cshining@wilshirelawfirm.com*
Jonas P. Mann, SBN 263314
*jmann@wilshirelawfirm.com*
Jennifer M. Leinbach, SBN 281404
*jleinbach@wilshirelawfirm.com*
Jesse S. Chen, SBN 336294
*jchen@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff*
*and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HEINZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAZDA MOTOR OF AMERICA, INC, a California Corporation; DOES 1 to 100, inclusive,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Plaintiff BRIAN HEINZ ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant MAZDA MOTOR OF AMERICA, INC. ("Defendant" or "MAZDA") based upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigations of his attorneys.

## NATURE OF THE ACTION

1.      In or around October 4, 2021, MAZDA issued a Technical Service Bulletin ("TSB") 01-012/21 entitled, "Check Engine Light On with DTC P250F:00 Due to Low Engine Oil Level", which described a defect causing high engine oil consumption which may result in the "LOW ENGINE OIL LEVEL" warning message and Check Engine light (CEL) illumination ("Defect") in the following 2021 model year Mazda vehicles: 3; 2 Preferred; 3 Premium; 3 S; 3 Select; 3 Turbo; 3 Turbo Premium Plus; 6 Carbon Edition; 6 Grand Touring; 6 Grand Touring Reserve; 6 Signature; 6 Sport; 6 Touring; CX-30 Preferred; CX-30 Premium; CX-30 S; CX-30 Select; CX-30 Turbo; CX-30 Turbo Premium; CX-30 Turbo Premium Plus; CX-5 Carbon Edition; CX-5 Carbon Edition Turbo; CX-5 Grand Touring; CX-5 Grand Touring Reserve; CX-5 Signature; CX-5 Sport; CX-5 Touring; CX-9 Carbon Edition; CX-9 Grand Touring; CX-9 Signature; CX-9 Sport; and CX-9 Touring (the "Class Vehicles").

2.      According to this TSB, the Class Vehicles suffer from an unidentified defect within the Class Vehicles' powertrain components which cause them to consume an excessive amount of engine oil under normal operation in between regular oil change intervals (the "Defect"). As a result of the Defect, the Class Vehicles cannot maintain a proper engine oil level, and the excessive oil consumption may cause their engines to unexpectedly fail while in operation. Thus, anyone who drives a Class Vehicle, along with their passengers and other individuals who share the road with them, have been exposed to serious risk of accident and injury.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

3.     Defendant, at all times prior to and throughout their sale of the Class Vehicles, knew or should have known that the Class Vehicles were defective and not fit for their intended and ordinary purpose of providing consumers with safe and reliable transportation. Defendant would have learned of the Defect through, *inter alia*, pre-production testing, consumer complaint, warranty data and dealership repair orders. Despite this, Defendant has not recalled the Class Vehicles to repair the Defect, has not offered or provided purchasers of the Class Vehicles with adequate repairs, and has not offered reimbursement to purchasers of the Class Vehicles for costs they have incurred arising from the Defect. Instead, Defendant's TSB merely directs its dealerships to "top off the engine" oil when customers who complain about the excessive engine oil consumption caused by the Defect bring their vehicles in for service—a band-aid that merely mitigates the symptoms of the actual underlying problem. Defendant's TSB admits that it does not have a "complete repair" for this serious and dangerous Defect, and as of November 2022, Defendant has still not announced one.

4.     Even more egregiously, Defendant concealed the Defect, along with the resulting safety problems and additional costs, from Plaintiff and Class Members. Under statute and regulation, Defendant had a duty to disclose the Defect to Plaintiff and other individuals who purchased or acquired a Class Vehicle, as Defendant was in a superior position to know the true facts regarding the presence of the Defect, and Plaintiff and other individuals who purchased or acquired a Class Vehicle would not have reasonably expected to learn or discover the Defect until after they purchased the Class Vehicles. However, Defendant did not disclose the Defect, and instead concealed it from Plaintiff and other class members at the time of sale and at repair.

5.     Defendant has acknowledged the existence of the Defect and has admitted that it is unable or unwilling to repair the defective Class Vehicles within a reasonable period of time. To date, Defendant has not made available any repairs

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

to defective Class Vehicles that cure the Defect, nor has it offered to compensate Plaintiff of Class Members for their injuries or costs incurred as a result of the Defect.

6.      As a result of Defendant's misrepresentation and omissions, Plaintiff and class members have suffered an ascertainable injury in the loss of their money, property and/or loss of the value of their Class Vehicles, as well as in the loss of their time mitigating and dealing with the Defect. Defendant benefits and continues to benefit from its unlawful conduct. Defendant sells its vehicles at a price premium while avoiding its warranty obligations, while purchasers of the Class Vehicles have been harmed and will continue to be harmed by the Defect.

7.      Plaintiff, on behalf of the proposed class members, thus brings this action for violations of California's Unfair Competition Law and Consumer Legal Remedies Act. Defendant's violations further constitute unjust enrichment, and a breach of express and implied warranties.

8.      To remedy Defendant's unlawful conduct, Plaintiff, on behalf of the proposed class members, seek damages and restitution from Defendant, as well as notification to class members informing them of the Defect.

## THE PARTIES

9.      Plaintiff BRIAN HEINZ is a California resident residing in West Sacramento, California. On or around September 1, 2021, Plaintiff purchased a 2021 Mazda CX-30 (hereafter the "Heinz Mazda") from the Maita Mazda dealership located at 2410 Auburn Blvd, Sacramento CA 95821. On or around February 2022, the low engine oil light of the Heinz Mazda began to intermittently come on, then turn off, indicating low engine oil. On or around May 24, 2022, the low engine oil light of the Heinz Mazda turned on, indicating a low engine oil level. Upon noticing this, Plaintiff took the Heinz Mazda to a Mazda dealership located at 2410 Auburn Blvd., Sacramento, CA 95821, where an oil change and other

services were performed. However, shortly after this, the Heinz Mazda's low engine oil light came back on again.

10.    MAZDA MOTOR OF AMERICA, INC. is a CALIFORNIA corporation with its principal place of business at 200 Spectrum Center Drive, Irvine, California 92618. MAZDA's registered agent for service of process is Hanh Nguyen, an individual located at 200 Spectrum Center Drive, Suite 100, Irvine, California 92718.

11.    Plaintiff is unaware of the true names, identities, and capacities of the defendants sued herein as DOES 1to 100. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 1 to 100 if and when ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings alleged herein and that each of the defendants sued herein as a DOE proximately caused injuries and damages to Plaintiff and Class members as set forth below.

**JURISDICTION AND VENUE**

12.    This Court has subject matter jurisdiction over the state law claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since, upon the original filing of this complaint, members of the putative Plaintiff class resided in states around the country; there are more than 100 putative class members; and the amount in controversy exceeds $5 million.

13.    The Court also has personal jurisdiction over the Parties because Defendant routinely conducts business in California and has sufficient minimum contacts in California to have intentionally availed themselves to this jurisdiction by marketing and selling their technology services in California.

14.    Venue is proper in this District because, among other things: (a) Defendant is a resident of the Central District, (b) Defendant directed its activities at residents in this District; and (c) many of the acts and omissions that give rise to

this Action took place in this District.

15.     Venue is further appropriate in this District pursuant to 28 U.S.C. § 1391 because, among other things (a) Defendant resides in and conducts substantial business in the Central District, (c) Defendant directed its services at residents in the Central District; and (d) many of the acts and omissions that give rise to this Action took place in the Central District.

## FACTUAL ALLEGATIONS

### A.     Plaintiff's Defective 2021 Mazda CX-30

16.     On or around September 1, 2021, Plaintiff BRIAN HEINZ purchased the Heinz Mazda, Vehicle Identification Number 3MVDMABL8MM202427, at Maita Mazda, an authorized Mazda dealership located at 2410 Auburn Blvd, Sacramento, CA 95821.

17.     Included with Plaintiff's purchase was MAZDA's New-Vehicle Limited Warranty, which promised Plaintiff that the Heinz Mazda was "free of defects with normal use and prescribed maintenance for 36 months or 36,00 miles, whichever comes first."[1] Also included with Plaintiff's purchase was MAZDA's Powertrain Limited Warranty, which covers repairs for "defects in materials and workmanship in the powertrain components supplied by Mazda " for "60 months or 60,000 miles, whichever comes first."[2]

18.     In or around February of 2022, Plaintiff experienced the Defect. Specifically, Plaintiff noticed that the Heinz Mazda's low engine oil light came on and off intermittently. This issue persisted even after Plaintiff refilled the engine's oil.

19.     On May 24, 2022, Plaintiff brought the Heinz Mazda into the Maita Mazda dealership located at 2410 Auburn Blvd., Sacramento, CA 95821 ("Maita")

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[1] "Warranty," MAZDA, https://www.mazdausa.com/fleet/warranty (last accessed November 3, 2022).
[2] *Id.*

to address this issue. Maita inspected and performed an oil change on the Heinz Vehicle and determined that there was no evidence of the engine leaking fluid. Notably, the Maita inspection found that the Heinz Mazda's engine oil was "about 1 quart bellow full," despite Plaintiff having refilled the engine's oil approximately two weeks prior to the inspection.

20.     Maita informed Plaintiff that they did not find evidence that the Heinz Mazda's engine was leaking fluid and did not perform repairs to fix the Defect. Plaintiff's low engine oil light turned back on shortly after his inspection and service at Maita. Plaintiff must now add additional engine oil to the Heinz Mazda whenever the low engine oil light turns on, and thus has been forced to purchase engine oil at a substantially increased rate. Plaintiff has also been placed at a significant risk of substantial injury or death, should the Heinz Vehicle unexpectedly fail during operation due to the Defect. Plaintiff does not wish to drive the defective Heinz Vehicle before its Defect is repaired and it may be safely operated but must continue to do so because he continues to require the use of a motor vehicle.

21.     Accordingly, unless and until the Heinz Mazda is repaired to no longer suffer from the Defect and be fit for its ordinary purpose, Plaintiff has and will continue to suffer financial harm, and has been placed at an increased risk of car crash and injury.

22.     At all times, Plaintiff has operated the Heinz Vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**B.     The Defect**

23.     The combustion engine of all motor vehicles, including the Class Vehicles, require a sufficient level of engine oil to properly function. Engine oil contains important cleaning and sealing properties and is used to lubricate various parts of a vehicle's engine to reduce friction, dissipate heat, and protect the engine's components from wear and corrosion. Without a sufficient level of engine oil, a

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

vehicle's engine would eventually overheat and would not be able to continue driving. Accordingly, the Class Vehicles require a sufficient level of engine oil at all times in order to be operated safely and efficiently.

24.     The Class Vehicles contain an unidentified Defect in their powertrain components that causes engine oil to leak into the Class Vehicle's engine's combustion chamber. This Defect causes the Class Vehicles to consume an excessive amount of engine oil far beyond the norm of comparable vehicles. If left unaddressed, this Defect will cause long-term damage to the Class Vehicle's engines and other components and will cause them to be more likely to fail and require replacement.

25.     Specifically, the engine oil leakage caused by the Defect creates carbon deposits and the vales and piston crown of the Class Vehicle's engine's combustion chambers, which causes hesitation and misfires that eventually lead to engine damaging detonation and pre-ignition problems. The resulting excess oil consumption caused by the Defect also increases hydrocarbon emissions in the exhaust, which may cause the catalytic converter to overheat and melt—creating a restriction or blockage in the exhaust. This results in excess exhaust gases, which can damage other systems in the Class Vehicle. The Defect can also cause the engine valves to fail to seal, and thus cause a lack of compression which restricts the acceleration of the Class Vehicle.

26.     On November 10, 2020, Defendant acknowledged that some of the Class Vehicles suffered symptoms of the Defect, in that they consume an excessive amount of engine oil. Specifically, Defendant updated its "High-Engine Oil Consumption" "M-Tips" Bulletin to include, *inter alia*, the following vehicles: 2021 Mazda3, 2021 Mazda6, 2021 CX-3, 2021 CX-5, 2021 CX-9, and noted that "[s]ome customers may complain about high engine oil consumption."

27.     Defendant provides M-Tips Bulletins to its Defendant's dealerships to direct them on how to address customer complaints. The November 10, 2020 M-

Tip Bulletin directs Defendant's dealerships, when presented with a complaint that the Class Vehicles consume excessive engine oil, to top off the engine oil and ask the customer to return after 1,200 miles to recheck the engine oil level. The Bulletin then states that "no repair is necessary" if the affected vehicle consumes less than one liter (1.06 quarts) of engine oil by that recheck.

28.     However, Defendant's Owner's Manual and Warranty for each of the Class Vehicles advise that such an oil service is recommended for a Class Vehicle only once every 10,000 miles or after one year, whichever is earlier.[3] Thus, a Class Vehicle which requires an oil service after only 1,200 miles driven consumes engine oil at a rate approximately 8.3 times higher than normal.

29.     In other words, Defendant's M-Tips Bulletin instructs its dealers not to offer repairs for Class Vehicles that consume excessive engine oil, so long as the Class Vehicle consumes engine oil at a rate less than 8.3 times higher than normal. For example, a Class Vehicle that consumes engine oil at a rate eight times higher than normal would not be considered defective under the M-Tips Bulletin and would not be offered repair. In fact, repairs for such vehicles are necessary and should be provided by Defendant and covered under Defendant's warranty. Upon information and belief, Defendant appears to have designed this M-Tips Bulletin to minimize repairs and associated costs, and not to truly address the excessive engine oil consumption caused by the Defect.

30.     Further, Defendant's inclusion of certain Class Vehicles in the November 10, 2020 M-Tips Bulletin establishes that Defendant had become aware of the Defect through sources of information not available to Plaintiff or the general public. The 2021 Mazda3 and Mazda6, and CX models were not released to the public until on or around September of 2020 but were included as "applicable

---

[3]   "2021 CX 30 Scheduled Maintenance," MAZDA, https://www.mazdausa.com/siteassets/pdf/owners-optimized/2021/cx-30/2021-cx-30-scheduled-maintenance.pdf (last accessed November 3, 2022).

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

models" suffering from high engine oil consumption only two months later—a timeframe too short for the vast majority of purchasers to discover the Defect. As Defendant would necessarily require extensive time to compile the underlying data before issuing such M-Tips Bulletins, the immediate addition of the 2021 models to the November 10, 2020, M-Tips Bulletin indicates that Defendant had been made aware of the Defect being extant in those models much earlier than their launch date—potentially through pre-production testing or internal drive-testing.

31.     On October 4, 2021, Defendant issued Technical Service Bulletin ("TSB") No. 01-12/21, which noted that certain Class Vehicles—2021 Mazda CX-30, CX-5, CX-9, Mazda3 and Mazda6 vehicles "produced before September 14, 2021"—were experiencing issues in which they would indicate low engine oil levels far earlier than normally expected. The TSB noted that the above-described vehicles would display a "LOW ENGINE OIL LEVEL" warning message and a "CHECK ENGINE" light illuminated in the instrument cluster and would store a "Engine oil level signal: engine oil level low" message in their memory. The TSB went on to state that '[t]his concern usually occurs when the mileage reaches approximately 3,100-4,700 miles (5,000-7,500km) and may occur again after replacing or topping off the engine oil," and that "[t]he root cause of this concern has not been identified yet." It is clear that, at the very latest, Defendant became fully aware of the Defect prior to issuing this October 4, 2021 TSB. Despite this, Defendant did not take steps to notify its customers of the Defect, did not issue a recall for the Class Vehicles, and continued to sell the Class Vehicles without disclosing the Defect.

32.     The TSB goes on the list repair procedures for this issue, stating that: "if the oil level is low, verify that there is no oil leakage in the engine compartment. If no oil leakage is found, top off the engine oil to the FULL level as a temporary measure." The TSB then directs the dealership to inform the customer of the oil leakage issue, and to inform them that the issue "will not cause any immediate

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

engine damage and the vehicle may be safely driven." Notably, the TSB does not direct the dealership to warn the customer of the long-term damage that the Defect will causes if not repaired—including the risk that the vehicle may suffer total engine failure while in operation.

33. Defendant issued an updated version of TSB No.01-012/21 on November 24, 2021. This updated version is near-identical to the October 4, 2021 TSB, with the only substantive change being that it now directs dealerships to "replace the engine oil" in lieu of topping it off "if service is due within 1000 miles or 30 days." The TSB continues to note that "[t]he root cause of this concern has not been identified yet, therefore a repair procedure will be announced at a later date."

34. To date, Defendant has not provided an adequate repair procedure to address the Defect in the Class Vehicles. Plaintiff has not been provided any repair options that will address their true underlying problems in this action and are highly concerned with their vehicles' excessive oil consumption, and resulting safety issues, that they are now forced to deal with. Plaintiff is not alone in his concerns, as thousands of complaints regarding the Defect have been posted by customers to various websites, including the website of the National Highway Traffic Safety Administration ("NHTSA") *See, e.g.*:

NHTSA Complaint ID No. 11488125, October 6, 2021 (2021 Mazda CX-30):
Purchased Mazda CX-30 Turbo car new March 31, 2021, in Jan 2022 low oil light cam on with only 5,000 miles. Dealer noted it was 1 qt low. Just prior to reaching 10,000 miles the low oil light came on again. **This car is burning oil with normal driving**; primarily from rural area into town 15 min away or freeway driving. **This creates an unsafe situation with parts and engine failure**.
(emphasis added.)

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd. 12th Floor
Los Angeles, CA 90010-1137

NHTSA Complaint ID No. 1148956, August 5, 2022 (2021 Mazda CX-30):

Engine is consuming/burning oil. I needed to add 1 qt of oil every 3-4k miles, since purchased new. Car now has 25,000 miles and I have added oil 6 times. I've called the dealer (Classic Mazda in Mentor Ohio) and **they insist this is normal and there is no issue with the engine**. Yet, I read on the internet that this is a known problem. (emphasis added.)

NHTSA Complaint ID No. 11472739, April 1, 2022 (2021 Mazda CX-30):

**My car is burning a quart of oil every 1500 miles**. I have taken it to the dealer three times. They say that they know about the problem but don't have a fix. **I am afraid that the engine could seize up during driving, causing an accident.**
(emphasis added.)

NHTSA Complaint ID No. 11489693, October 18, 2022 (2021 Mazda6):

**Vehicle displays low engine oil light about every 1,000 miles due to burning oil from faulty valve stem seals from factory assembly.** Mazda has acknowledged the defect but plans only to refill engine oil. **The defect could lead to possible injury due to low oil which could cause the engine to seize and cause sudden loss of power.**
(emphasis added.)

NHTSA Complaint ID No. 11478909, August 11, 2022 (2021 Mazda CX-4):

Excess oil consumption. Manufacturer recommended oil change interval is 7,500 miles. At 3,500 miles a low oil warning light came on and I had to add oil. I changed my oil as recommended at 7500 miles. At 11,000 miles the warning light came on and I had to add oil once again. I am currently just shy of 15,000 miles and I'm getting my oil changed tomorrow. I've read that there is a known valve stem issue with these 2021 turbo engines that is causing this. **I'm worried that there may be a catastrophic engine failure that could cause me to crash.**
(emphasis added.)

35.     Defendant, at all times, had a duty to fully disclose the full and true nature of the Defect and associated repair costs to Class Vehicle owners. While

Defendant commented on the Defect in the above bulletins, both the M-Tips and TSB bulletins are provided to and intended for dealership use, and are not disseminated or readily accessible by the general public. To date, Defendant has made no public disclosure regarding the Defect.

36.     Defendant knew or should have known that the Defect poses an unreasonable safety hazard to Plaintiff and class members, as Defendant has, at all times, held exclusive knowledge or access to the material facts regarding the Class Vehicle's defective nature. Plaintiff and class members could not have known or reasonably discovered that the Class Vehicles contained the Defect, as Mazda actively concealed the Defect from its customers.

37.     Defendant was on notice that the Class Vehicle suffered from the Defect before Plaintiff and class members purchased their Class Vehicles. Defendant was on put on notice of the Defect through sources not available to Plaintiff or any member of the general public, including, without limitation, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Defendant's dealership network or directly to Defendant, aggregate dealership warranty and repair data compiled by Defendant, and testing conducted by Defendant both prior to and after receiving early consumer complaints.

38.     Further, upon information and belief, Defendant would have become aware of the Defect during the pre-release manufacturing and test-driving process of the Class Vehicles. In particular, testing intended to measure the Class Vehicles' long-term operation should have revealed the Defect, as it would have the excessive engine oil consumption caused by the Defect.

39.     Defendant would also have become aware of the Defect immediately following the release of the Class Vehicles. Defendant receives customer complaints both directly and through their dealerships, and would have noticed the large number of complaints, along with the consistency of the problems complained

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

about, as indicative of symptoms of the Defect.

40. Further, Defendant offers "Mazda Connected Services" and the "MyMazda" mobile application to Class Vehicles owners, that *inter alia*, monitors the real-time engine oil level of the Class Vehicles and notifies their owners when service is required. Class Vehicle owners have reported that Mazda Connected Services notifies them when their vehicle's low engine oil light is turned on. *See, e.g.*,

NHTSA Complaint ID No. 11444769, December 22, 2021 (2021 Mazda CX-5):

Bought the car brand new in May 2021, did a first oil change at around 4K miles due to the fact that the car uses conventional 5w-30 oil and not synthetic oil. At around 7k miles the low oil engine light cam on. Checked the dipstick and it was low. Added a quart of oil to hold me over until the next available appointment. Dealer could not find any leaks, they completed an oil change again. I went in at 11K for another oil change. Had no problems. A few days ago at 14K low engine light came on, this time I turned the car off. Let it sit over night. Made an appointment with the dealer for the next day. Turned the car on the next morning, light went away. **Both times I got a notification from Mazda connect services alerting me of these problems.** (Please see attached) I brought the car in on 12/22/21 and was told the car was low on oil and nothing else could be done until Mazda comes up with a solution."
(emphasis added.)

NHTSA Complaint ID No. 11468396, June 9, 2022 (2021 Mazda CX-9):

I purchased this vehicle June 5, 2021. The vehicle has approximately 9150 miles at this time. I changed the oil the first time at 3222 miles just because it was new and I wanted to have a starting point on oil changes. The car has an app you load on your cell phone for messages. **The first time I received a message that the engine oil was low of oil was around 6700 miles. I checked it and it was low with at the add oil mark with 3500 miles driven. I received a second message from the app stating the oil was low. Again, I checked the oil and it was to the add oil level with 9014 miles or only been driven 2300 miles**. I have contacted Mazda and will take it to the dealership in a few days, but I am having to add and check the oil ever [*sic*] day or so.

There seems to be an oil consumption issue with this engine."
(emphasis added.)

41.     Defendant receives and aggregates real-time data of all instances where the Class Vehicle's low engine oil light turns on. Defendant is thus necessarily aware of the frequency and volume of such notifications. Accordingly, Defendant was, or should have been, put on notice that the Class Vehicles suffered from a defect that causes them to consume excessive amounts of engine oil.

42.     Although Defendant is and has been aware of the widespread nature of the Defect in the Class Vehicles, including that the Defect poses grave safety risks if unrepaired for long periods of time, Defendant has failed to take adequate steps to notify the owners of the Class Vehicles regarding the Defect and provide relief. Owners of the Class Vehicles overwhelmingly do not discover the Defect until they notice the persistent low engine oil light issue and bring their Class Vehicles to one of Defendant's dealerships.

43.     Further, Defendant actively conceals the existence and nature of the Defect from their customers at the time or purchase. Defendant did not and still does not disclose that the  Class Vehicles contain the Defect prior to selling them to its customers.

44.     Defendant has deprived Plaintiff and class members of the benefit of their bargain. Plaintiff and class members purchased their Class Vehicles for the price that they paid under the reasonable but mistaken belief that the Class Vehicles were safe for driving. Plaintiff and class members would not have purchased the Class Vehicles or would not have paid the price that they paid, had they been made aware of the Defect prior to their purchase.

45.     Plaintiff and class members have also suffered injury in the form of out-of-pocket costs for repairs and additional oil changes resulting from the Defect. Defendant has not recalled the Class Vehicles to repair the Defect, has not offered a suitable repair to fix the Defect, and has not reimbursed the Class Members for

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

costs incurred resulting from the Defect.

46.     Further, the presence of the Defect has diminished the value of the Class Vehicles, including, but not limited to, their resale value. Reasonable consumers, like Plaintiff, expect that vehicles which they purchase will not contain undisclosed serious engine defects that cause it to consume engine oil at an elevated rate and which present safety issues when the vehicle is operated as intended. In particular, reasonable consumers expect and assume that reputable manufacturers such as Defendant will not sell or lease vehicles with known safety defects, or that they will at least fully disclose any such defect to consumers prior to their purchase. What reasonable consumers do not expect is that Defendant will fail to disclose such a defect to them prior to their purchase of a Class Vehicle, and then subsequently fail to repair that defect within a reasonable time period under their express and implied warranties.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action on their own behalf and pursuant to the Federal Rules of Civil Procedure Rule 23(a), (b)(2), (b)(3), and (c)(4). Plaintiff intends to seek certification of a Nationwide Class and California Subclass. The Classes are initially defined as follows:

The <u>Nationwide Class</u>, initially defined as:

All persons residing in the United States of America who are current or former owners and/or lessees of any of the following 2021 Mazda vehicle models: 3; 2 Preferred; 3 Premium; 3 S; 3 Select; 3 Turbo; 3 Turbo Premium Plus; 6 Carbon Edition; 6 Grand Touring; 6 Grand Touring Reserve; 6 Signature; 6 Sport; 6 Touring; CX-30 Preferred; CX-30 Premium; CX-30 S; CX-30 Select; CX-30 Turbo; CX-30 Turbo Premium; CX-30 Turbo Premium Plus; CX-5 Carbon Edition; CX-5 Carbon Edition Turbo; CX-5 Grand Touring; CX-5 Grand Touring Reserve; CX-5 Signature; CX-5 Sport; CX-5 Touring; CX-9 Carbon Edition; CX-9 Grand Touring; CX-9 Signature; CX-9 Sport; and CX-9 Touring.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

The <u>California Sub-Class</u>, initially defined as:

> All persons who purchased or leased any of the following 2021 Mazda vehicle models in the State of California: 3; 2 Preferred; 3 Premium; 3 S; 3 Select; 3 Turbo; 3 Turbo Premium Plus; 6 Carbon Edition; 6 Grand Touring; 6 Grand Touring Reserve; 6 Signature; 6 Sport; 6 Touring; CX-30 Preferred; CX-30 Premium; CX-30 S; CX-30 Select; CX-30 Turbo; CX-30 Turbo Premium; CX-30 Turbo Premium Plus; CX-5 Carbon Edition; CX-5 Carbon Edition Turbo; CX-5 Grand Touring; CX-5 Grand Touring Reserve; CX-5 Signature; CX-5 Sport; CX-5 Touring; CX-9 Carbon Edition; CX-9 Grand Touring; CX-9 Signature; CX-9 Sport; and CX-9 Touring.

48.     Excluded from each of the above Classes is Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judge and the court personnel in this case and any members of their immediate families. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

49.     *Numerosity*, Fed. R. Civ. P. 23(a)(1):  While the exact number and identities of the Classes are unknown at this time, the members of the Classes are undoubtedly so numerous that the joinder of all members is impractical. By way of example, Defendant's sales reports indicate that it sold a total of 38,064 2021 Mazda CX-30s in 2020, which increased to 60,185 in 2021. Thus, the disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court.

50.     *Commonality*, Fed. R. Civ. P. 23(a)(2) and (b)(3): There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

a. Whether the Class Vehicles suffer from the Defect;

b. Whether the Defect constitutes an unreasonable safety hazard to Class Members;

c. Whether Defendant knew or reasonably should have known of the Defect before it sold or leased the Class Vehicles to Plaintiff and the Class Members;

d. Whether the Defect constitutes a material defect;

e. Whether Defendant has and had a duty to disclose the Defect, and its resulting effects on the Class Vehicles, to Plaintiff and Class Members;

f. The nature of the relief, including equitable relief, to which Plaintiff and the Class Members are entitled; and

g. Whether Plaintiff and the Class Members are entitled to damages, civil penalties, and/or injunctive relief.

51.     *Typicality*. Fed. R. Civ. P. 23(a)(3):  Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the other Class Members, purchased a Class Vehicle that effected by the defect. Plaintiff has suffered he exact same economic injuries arising out of the Defendant's wrongful conduct as the other Class Members and advances the same claims and legal theories on behalf of himself and other Class Members.

52.     *Adequacy of Representation*, Fed. R. Civ. P. 23(a)(4):  Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff has retained competent counsel experienced in litigation of consumer class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff's claims are typical of the claims of other members of the Classes and Plaintiff has the same non-conflicting interests as the other Class Members. Therefore, the interests of the Classes will be fairly and adequately represented by Plaintiff and his counsel.

53.     *Superiority of Class Action*, Fed. R. Civ. P. 23(b)(3):  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

54.     Damages for any individual class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

55.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendant has acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Breach of Express Warranty**

(On Behalf of Plaintiff and the Nationwide Class)

56.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 55, inclusive, of this Complaint as if set forth fully herein.

57.     Plaintiff and Class Members purchased Class Vehicles from Defendant.

58.     Defendant includes its New Vehicle Limited Warranty and Powertrain Limited Warranty with the sale of each and every one of the Class Vehicles. Both warranties promise purchasers that Defendant will repair or replace defective parts of the Class Vehicles within the respective warranty period. Both warranties thus

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

act as assurances that form an integral part of the basis of the bargain between Defendant and Plaintiff and Class Members.

59.     Defendant's New Vehicle Limited Warranty period is 36 months or 36,000 miles, whichever comes first. At the time Plaintiff first discovered the Defect and brought his Heinz Vehicle in for service and repair, his Heinz Vehicle was covered under this warranty, as he had owned his Heinz Vehicle for less than 36 months, and had not driven the Heinz Vehicle for more than 36,000 miles. The New Vehicle Limited Warranty expressly promises that Defendant will "remedy during the warranty period any such defects in material and workmanship of all parts and components supplied by Mazda," including the "repair or replace[ment] of defective part(s)."

60.     Defendant's Powertrain Limited Warranty period is 60 months or 60,000 miles whichever comes first. At the time Plaintiff first discovered the Defect and brought his Heinz Vehicle in for service and repair, his Heinz Vehicle was covered under this warranty, as he had owned his Heinz Vehicle for less than 60 months and had not driven the Heinz Vehicle for more than 60,000 miles.  Like the New Vehicle Limited Warranty, the Powertrain Limited Warranty provide for the "repair or replace[ment]" of defective powertrain components.

61.     Defendant has breached its New Vehicle Limited Warranty and Powertrain Limited Warranty. The Heinz Vehicle and other Class Vehicles contain a Defect which causes excessive oil consumption, and are covered under both warranties and should be repaired and/or replaced under both warranties. Defendant has long been aware that this Defect is present in all of the Class Vehicles. Despite this, Defendant has admitted that it is unwilling or unable to repair the Defect within a reasonable time. Nor has Defendant offered to reimburse Plaintiff or Class Members for injuries or costs incurred in dealing with the resulting damage and excessive engine oil consumption caused by the Defect.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

62.     As a direct and proximate result of Defendant's breach of its express warranties, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial, including actual damages, punitive damages, and costs.

## SECOND CAUSE OF ACTION

### Fraudulent Concealment

(On Behalf of Plaintiff and the Nationwide Class)

63.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 62, inclusive, of this Complaint as if set forth fully herein.

64.     By failing to disclose the Defect extant in the Class Vehicles, including the resulting excess engine oil consumption and long-term damage to the Class Vehicle's engines, Defendant concealed and suppressed material facts concerning the performance and quality of the Class Vehicles.

65.     Defendant knew or should have known that the Class Vehicle's engines were defectively designed or defectively manufactured and were not suitable for their intended use.

66.     The facts concealed or not disclosed by Defendant to Plaintiff and Class Members are material to reasonable consumers because they are important to a reasonable consumer's decision to purchase a Class Vehicle. A reasonable consumer acting reasonably under the circumstances does not expect that a Class Vehicle that they purchase will suffer from major manufacturing defects which cause it to consume engine oil at an excessive rate or suffer from premature engine damage or failure.

67.     Defendant had a duty to disclose the defective nature of the Class Vehicles to Plaintiff and the Class Members, including the associated risk of injury and engine oil replacement costs. Defendant was, at all times, in a superior position to know the true facts regarding the presence of the Defect, as Plaintiff and other

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

individuals who purchased or acquired a Class Vehicle would not have reasonably expected to learn or discover the Defect until after they purchased the Class Vehicles.

68.     Upon information and belief, Defendant has still not made full and adequate disclosures regarding the defective Class Vehicles and continues to defraud consumers by concealing material information regarding the performance and quality of the Class Vehicles. By failing to disclose the Defect, Defendant has knowingly and intentionally concealed material facts from Plaintiff and Class members and breached its duty not to do so.

69.     Plaintiff and Class Members were misled into their purchases of the Class Vehicles. Had Plaintiff and Class Members known that the Class Vehicles suffered from the Defect, they would not have purchased the Class Vehicles or paid less for them. Plaintiff and Class Members have been deprived of the benefits of their bargains.

70.     As a result of Defendant's misconduct, Plaintiff and the Class Members have been harmed and suffered actual and economic damages. The Class Vehicles are defective and require repairs or replacement. The Class Vehicles are also worth less because they suffer from the Defect.

71.     Defendant has profited and benefited from misleading Plaintiff and Class Members into their purchases of the Class Vehicles. Defendant voluntarily accepted and retained the full profits and benefits of those purchases, with the full knowledge and awareness that they had provided Plaintiff and Class Members with Class vehicles that were not of the quality, nature, fitness, or value that had been represented by Defendant.

72.     As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial, including actual damages, punitive damages, and costs.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

## THIRD CAUSE OF ACTION

### Unjust Enrichment

(On Behalf of Plaintiff and the Nationwide Class)

73.     Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 72 inclusive of this Complaint as if set forth fully herein.

74.     Defendant was or should have been aware of the defective nature of the Class Vehicles but did not disclose that defective nature to Plaintiffs and Class Members prior to their purchases. Likewise, Defendant knew or should have known that Defects extant in the Class Vehicles would have been material to reasonable consumers such as Plaintiffs or Class Members.

75.     As a result of Defendant's fraudulent acts and omissions, Plaintiffs and Class Members purchased the Class Vehicles where they otherwise would not have purchased them or purchased the Class Vehicles for prices which they would not have been willing to pay had they been made aware of the Defect. Thus, Defendant was unjustly enriched went it sold more of its Class Vehicles at a higher price than they otherwise would have.

76.     Defendant's enrichment came at the expense of Plaintiff and Class Members, who purchased the Class Vehicles under the false but reasonable belief that they would be free from major manufacturing defects and consume engine oil at a normal rate. Instead, Plaintiffs and Class Members received Class Vehicles with engines that the Defect, and which consume engine oil at an excessive rate. Defendants failed to deliver non-defective Class Vehicles to Plaintiff and Class Members as promised, did not and still has not make repairs to the Class Vehicles available to Plaintiff and Class Members in a timely manner, and has never offered to reimburse Plaintiff and Class Members for the loss of value of their Class Vehicles or the costs incurred resulting from the Defect.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

77.     Defendant is the world's 15th largest automobile manufacturer and has established a trustworthy reputation among consumers through decades of successful marketing and widespread customer adoption. Plaintiff and Class Members reasonably trust and depend upon Defendant to not sell defective vehicles, or to disclose major defects extant in their vehicle to them prior to purchase. Defendant broke that trust in selling the Class Vehicles to Plaintiff and Class Members, whilst not disclosing and concealing the Defect.

78.     In doing so, Defendant appreciated, accepted, and retained the non-gratuitous monetary benefits conferred by Plaintiff and Class Members who, without knowledge of the Defect, would not have purchased or who paid a higher price for their vehicles than they otherwise would not. Plaintiff and Class Members have suffered damages in reliance of Defendant's wrongful conduct.

79.     Allowing Defendant to reap the reward of exploiting consumers who are otherwise unaware of the defective nature of the Class Vehicles would be against equity and good conscience. Defendants should not be allowed to profit at the expense of consumers who they mislead into purchasing their products.

80.     As a direct and proximate cause of Defendant's fraudulent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this Court.

## FOURTH CAUSE OF ACTION

### Violation of the Unfair Competition Law

### Cal. Bus. & Prof. Code §17200, et seq. ("UCL")

(On behalf of Plaintiff and the California Sub-Class)

81.     Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 80 inclusive of this Complaint as if set forth fully herein.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

82.     By their actions and conduct as alleged herein, Defendant has committed one or more acts of unfair competition within the meaning of California Business and Professions Code §17200 ("UCL") that constitute unfair, unlawful and/or fraudulent business practices as those terms are defined under California law.

83.     Defendant's business practices are unfair under the UCL because Defendant has acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and the Class Members. These business practices, as described *supra*, include the concealment and failure to disclose the Defect in the Class Vehicles to consumers who otherwise would not purchase the Class Vehicles or would not pay as much as they paid for them. Further, the impact of the practice against Plaintiff and Class Members far outweighs any possible justification or motive on the part of Defendant. The impact of Plaintiff and Class Members has been described. Defendant has no possible justification for offering defective Class Vehicles for sale whilst concealing or not disclosing their defective nature. Plaintiff and Class Members could not have avoided this injury, as the existence and nature of the Defect was, at all times preceding Defendant's sale of the Class Vehicle, exclusively available only to Defendant.

84.     Defendant's business practices are also unfair because they significantly threaten or harm competition. Competition is fostered in an environment in which consumers can rely upon a seller's express and implied warranties that a vehicle is free from major defects. Conversely, competition is adversely affected when consumers feel that they cannot rely upon a seller's warranties that the vehicle they purchase will not suffer from major defects that affect normal operation of the vehicle following their purchase.

85.     Finally, Defendant's business practices are also fraudulent under the UCL because they constitute fraudulent concealment that is likely to deceive the

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd. 12th Floor
Los Angeles, CA 90010-1137

public. By failing to disclose the Defect extant in the Class Vehicles, including the resulting excess engine oil consumption and long-term damage to the Class Vehicle's engines, Defendant concealed and suppressed material facts concerning the performance and quality of the Class Vehicles.

86.    Defendant's fraudulent concealments are likely to mislead the public, who reasonably rely on reputable automobile manufacturers like Defendant to refrain from selling defective vehicles, or to disclose the defective nature of those vehicles prior to their sale.

87.    Defendant knew or should have known that the Class Vehicle's engines were defectively designed or defectively manufactured and were not suitable for their intended use. Defendant further knew or should have known that the fact that the Class Vehicle's contained a Defect that would be material to a reasonable consumer. Plaintiff and Class Members relied on that fact that Defendant did not disclose the Defect in purchasing their Class Vehicles. Had they been made aware of the defect prior to their purchases, they would not have purchased the Class Vehicles, or would have only been willing to pay significantly less for them.

88.    As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial, including actual damages, punitive damages, and costs.

## FIFTH CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §1750, *et seq.***

(On behalf of Plaintiff and the California Sub-Class)

89.    Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 88 inclusive of this Complaint as if set forth fully herein.

90.     Plaintiffs mailed the CLRA notice on November 15, 2022.

91.     Defendants are "persons" as defined under Cal. Civ. Code §1761(c).

92.     Plaintiff and Class Members are "consumers" as defined under Cal. Civ. Code §1761(c) because the purchased Class Vehicles for personal, family, or household use.

93.     The sale of the Class Vehicles to Plaintiff and the Class Members is a "transaction' as defined under Cal. Civ. Code §1761(c).

94.     Defendant's acts and practices, which were intended to result, and which did result, in the sale of the Class Vehicles, violated §1770 of the CLRA. Defendant, by failing to disclose and concealing the defective nature of the Class Vehicles from Plaintiff and Class Members, falsely represented that the Class Vehicles have characteristics, uses, or benefits that they do not have, and that the Class Vehicles are of a particular standard, quality, or grade when they are not. *See* Cal. Civ. Code §§1770(a)(5), (7), (9) and (16).

95.     Defendant's unfair and deceptive acts or practices occurred repeatedly in the course of Defendant's trade or business and was capable of and did deceive a substantial portion of the purchasing public. Defendant's failure to disclose the defective nature of the Class Vehicles has also imposed a serious safety risk on the public, as the Class Vehicles are at an elevated risk of experiencing engine failure during normal operation.

96.     Defendant knew or should have known that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use. The Defect extant in each of the Class Vehicles was present at the time of purchase and was not discoverable by Plaintiff or the Class members until months or years after their purchase.

97.     Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles prior to their purchases, as they knew or should have known that such information was material to a reasonable consumer.

In failing to disclose the defective nature of the Class Vehicles, Defendant knowingly and intentionally concealed material facts and breached their duties.

98. As a result of their reliance on Defendant's fraudulent acts or omissions, Plaintiff and Class Members have suffered an ascertainable loss of money, property and/or value of their Class Vehicles. In addition, Plaintiff and Class Members were harmed and suffered actual damages in the form of damage to their vehicle's engine components caused by the Defect, as well as in the necessity to pay for oil changes for the Class Vehicles at an excessive rate.

99. As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff and Class Members have suffered injury and are entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all of the Class Members, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

1. For an Order certifying the Classes as defined herein and appointing Plaintiff and his Counsel to represent the Classes;

2. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the Class Vehicles;

3. For equitable relief compelling Defendant to widely disclose the Defect extant in the Class Vehicles.

4. For an award of actual damages, statutory damages and compensatory damages, in an amount to be determined at trial;

5. For an award of punitive and treble damages, in an amount to be determined at trial;

6. For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

7.      For such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: November 15, 2022                    Respectfully Submitted,

/s/ *Thiago M. Coelho*

Thiago M. Coelho
**WILSHIRE LAW FIRM, PLC**
*Attorneys for Plaintiff*

COMPLAINT